Case number 20-3575 C Schwamberger v. Marion County Bd of Elections et al. 15 minutes for the appellant, 15 minutes to be chaired by the appellees. Mr. Ratliff, you may proceed for the appellant. Thank you. Good morning, your honors. Attorney Jeff Ratliff. I am the attorney for Appellant Sue Schwamberger. I have reserved five minutes of time for rebuttal. Um, this is a case where appellant's complaint contained three causes of action, federal causes of action. We have the First Amendment retaliation case in action. We have the 14th Amendment due process, and we have the 14th Amendment equal protection. Just to outline for the court how the briefing went at the district level is that we had a phone conference. Judge Zahari requested that letters be done regarding a dismissal on 12-B-6. The letters were completed. Then there was a second phone conference. And then during that second phone conference, Judge Zahari had requested that those letters just be submitted as the briefing. So there was no necessarily formal briefing. There was just at a pretrial phone conference, the request by the judge to have the letters just be the briefing in this case. So when the court's looking at those letters, that is the briefing that occurred at the lower level. When we get to the retaliation for free speech, there's a three-part test in the Handy Clay v. City of Memphis v. Tennessee case. That three-part test is whether the appellant engaged in constitutionally protected conduct, whether there was an adverse action against her for engaging in that constitutionally protected conduct, and then whether her speech was a substantial and motivating factor for the adverse action to occur against her. Now, once we get to the first part of the retaliation for free speech test, that's a three-part test. We also get into another three-part test within determining whether she engaged in constitutionally protected conduct. So the first part within that test is that whether she was speaking as a citizen. And when we're talking as a citizen, it's always in quotes, and I want the court to understand that in this particular case, what appellant was speaking on and the election discrepancies that she wanted to report to the board, this would be the public's interest in receiving this information, is extremely strong and heightened in this case. When you're looking at appellant and whether she was speaking as quote, a citizen, you take and you have to look at the content and the context of appellant's speech. What was the general subject matter, the setting that she was speaking at, the speech's audience, and her incentive for the speech. So when we take a look at that, I think it's important to note that during her speech, appellant was not the deputy director of the Marion County Board of Election. She had been removed due to a conflict. The conflict would be that I was running for county prosecutor, she is my mother, so therefore she was unable to participate in her duties as deputy director. So she was not just not participating in her duties, she was actually removed as the deputy director, and that's what's contained in the complaint. Well, I thought she was removed for an election, not that she was removed from her position as deputy director. We believe and we put in our complaint that Jackie Fields replaced her as deputy director. So if Jackie Fields replaced her as deputy director, she was not able to speak as deputy director. If the other is concerned... That particular matter, but she still held the position as deputy director, is that right? She received a paycheck and she worked, but she just did day-to-day operations just like any other Grunt employee would have during this time period. But she still had the title and salary of deputy director. She would have the title and salary, but the duties that were participating in were taken over by somebody else. So the way the Marion County Board has structured is that they have a director and a deputy director, a D and an R, and anything that the director would have been doing, there has to be somebody in that role and position to monitor and participate in that election. She did not do that. Jackie Fields did. I thought you were bringing this claim because she was terminated as quote-unquote deputy director. Under the complaint in the very beginning of it, we state generally what her position was and what occurred, but during the election, she was not the deputy director. She did not participate in that. I understand that, but aren't you bringing the... Isn't the whole cause of action based on her being deputy director? It's based on her termination for the speech she engaged in. I'm sorry, that's a fair statement, but I mean termination as deputy director. Yes, she was terminated from that position with them, but that is different than participation as a citizen when you're looking at whether she engaged in protectionally constituted conduct. Do you have any case law for that proposition that because you're accused from something, you no longer hold your position and can engage in conduct that is prohibited by them? I'm sorry, go ahead. I have not found any. That would be something of first impression for the court to consider, but if the court just looks at that she was in that role, then you are just saying she is a confidential employee regardless of what she does because she has that title, and you're looking at whether she is confidential and what makes her confidential, and in this case, she was not... She was just doing day-to-day operations like any other employee such as the secretary for them or anybody in those positions would have done during that election. So when we're talking and also when you're engaged in something of great public concern, you also look at even if you consider her as deputy director, how was she speaking during this speech? Did she have speaking as a citizen that is with a citizen's interest? Was she speaking as a deputy director even though she had the title, or was she speaking as a citizen's interest in informing the public? She was speaking as probably as a mother towards her son and the election that occurred and the discrepancies that she had solved, which would make it even more of her speaking as her own citizen in this. She was critical of the board's policies, I gather, in relation to that election, was she not? That is incorrect. She is reporting to the board what policies and directives by the secretary of state that were not followed in the election. She was not stating her own opinion whether a policy that the board had or a directive that the board had was bad and that here's how we should run our elections. That would be her speaking to her own opinion. All she is informing them of did or did not something occur. That is factual. Whether he, the director, did something in the election that should have been done or not done is not her opinion. It is whether that actually occurred or not. She is relaying whether he followed their own policies. Not her own. One problem here, she's speaking, she's the deputy director and she's engaging in what, for lack of a better way to characterize it, we might call political speech or speech pertaining to policies and the audience to whom she's speaking, which would be members of the public, they may not know that she's recused as to this matter. All they know is she's the deputy director of the organization. So, the problem is, there still would be the problem, right? Well, the board previously in another meeting prior to the public had announced that she had been recused. Well, that announcement may have gotten to some members of the public and not to others, but when she's running around making a speech, all the public knows is that this speech is coming from the deputy director. But I don't think determination of her saying I am not speaking as the deputy director is and is of itself of whether this speech should be protected or not. So, if she makes the sentence before she starts on speaking as a private citizen, I still say they make the argument that she's not speaking as a private citizen. So, the fact that she just informs the audience that she's speaking on her own accord and not as deputy director does not determine whether the speech is protected or not. Let me ask you this. In the fall, shortly before the election, she was reprimanded and given a three-day suspension. What caused that? That would be related to work-related issues, hostile work environment, her and the deputy director, those kind of issues non-related to anything related to the speech that she gave. She's the deputy director. That's correct. So, what, did she get in a fuss with the director? It was over several other different things that were occurring not related to the general election that occurred in the speech that she gave. Well, what were the things? Maybe it would help us to know what the things were. Well, I mean, his vulgar language, cussing at her, screaming at her, those kind of things, the hostile work environment that he gave for her and other people. The only reason is to suspend him. Why was she suspended? That is correct. That is part of the equal protection that she was treated differently, not only in this speech, but also in other areas of aspect of this case. Of course, he was removed himself a few months later, wasn't he? But that was by the Secretary of State that reviewed this case, not by the Marion County Board. They treated him differently, a male, than they treated her, a female, under the same election. And she didn't even participate in the election. He was removed due to what occurred in the election, and he was the one that handled the election, not her. And I see that my time is up. All right, we'll hear from opposing counsel. See, there are two of you arguing. Is that right? Yes, Your Honor. Jeff Stankunas for the Apley, the Marion County Board of Elections, and I'll be going first, if that's okay. Sure. Thank you. May it please the court, if I could just address some of Ms. Schwamberger's counsel's arguments. He spent a lot of time basically arguing to you all to apply the Pickerington balance test. And we submit that the authoritative case is the Rose case, which comes out of the Branty Elrod line of cases. And as this court knows in Rose, it held that the Pickerington balance does not apply when a policymaking public employee is discharged for speech related to his political or policy views. Ms. Schwamberger was the deputy director. The complaint does in fact allege that she was the deputy director at the time of her removal. We would ask you to examine the complaint carefully because we believe that a lot of this, including that the argument that Ms. Fields somehow became the deputy director and that Ms. Schwamberger ceased to be the director. We asked this court to look at the Tampos case, which we believe is completely analogous. Tampos applies Rose. And just to refresh your recollection, Rose was a complaint. A policymaker was complaining about his subordinate who he declared that he was going to fire. Very similar here to Ms. Schwamberger, who was complaining about her colleague, the director, and about his actions. And then of course, the Tampos case was a fire chief and the fire chief was complaining about safety standards not being adhered to at the fire department. And this court found that those were really policy views about the mayor and the mayor's budget priorities. And therefore, because Tampos was a policymaking employee, his First Amendment claim could not be had. The court doesn't even go to the Wayne under Pickerington. And as the court acknowledged earlier in questioning, the complaints from Ms. Schwamberger were about the board of elections conduct of the 2018 election, alleged irregularities, errors and discrepancies and other problems, just like the complaints in Tampos and Rose. Even though Ms. Schwamberger attempts to make the complaints about herself and outside of her job, even in her briefing, she concedes that she was discussing her views of the Secretary of State's directives and her opinion or the board of elections policy with the director not following these directives. She even submitted this. This speech was exactly the informative speech that the board should welcome. And I'd also like to touch a little bit upon the Garcetti case. Garcetti was in fact referenced in the motion for judgment on the pleadings and a footnote as this court knows, when an employee is speaking in their capacity of their job because their job requires them to speak, they cannot have a first amendment claim. And here Ms. Schwamberger as the deputy director talking about alleged discrepancies in the 2018 election, whether she had been prohibited from having hands on involvement in the 2018 election because of her son or not, or whether she in fact somehow became simply a board of elections employee and no longer a deputy director. That was her job. If she observed such discrepancies to bring those to the board of elections, she did that. She did that in an open meeting. The questions were correct in that the public would have been there. But of course, the meeting is to address the board of elections, her employer. And so as this court knows, it can affirm for any reason moved by the parties, even if not relied upon by the district court. So we would submit that Garcetti is an alternative reason for which this court can affirm the district court's decision on the first amendment claims. I wonder if you're sort of getting at the argument that if she's recused from a matter, she shouldn't be speaking on it at all, either as purportedly in her position or as a private citizen. If you're recused, you're recused and you shouldn't be addressing the matter one way or the other. Is that an argument here or not? Your Honor, we would submit that even if she had been directed not to have involvement to make decisions or take action with regard to the 2018 election or the subsequent counting of the votes or certification of the results with regard to the same, as you heard her counsel say, she was still working at the board of elections. She was still working there every day. And so if something of this magnitude had, in fact, really come to her attention, and the only way that could have happened is by working at the board of elections, she certainly had a duty to bring that to the attention of the board, just as her counsel submitted in the briefing. And so, therefore, we would submit that even if she had been recused, it was still she was still speaking in her capacity as a board of elections employee when she raised those issues with her employer. If there are no further questions about the first amendment claim, I'll just touch briefly on the due process claim and note that there are three different statutes which make the deputy director an at-will employee and thus one that cannot bring a due process claim. The first is cited in the briefing in detail. That's 3501.09. We would additionally direct your attention to the latter part of that statute, which additionally applies that even after a deputy director is appointed, they may subsequently be found to be unnecessary and thus shall not be employed. In addition, Ohio civil service law 124.1182 makes elections officers unclassified. It references 35.01.01, which basically says a deputy director and all employees of a board of elections are unclassified. And then we've also cited but didn't highlight 3501.14. And I'd just like to highlight that for your benefit. And 3501.14 says the director, deputy director, and other employees of the board are not public officers and shall serve during their term of office at the discretion of the board. The board may summarily remove the director or the deputy director by a vote of not less than three of its members and may remove any other employee by a majority vote of its membership. And finally, with regard to the equal protection claim, this court's been clear that in order to bring an equal protection claim, the complaint must allege facts which support either direct evidence of discrimination or disparate treatment. And if you review the complaint, you'll find only one reference to gender and age. And that's going to be under the intentional infliction of emotional distress, the state law claim, which says that defendant Meyer had the full knowledge of plaintiff's gender, age, health, and well-being. And so we would submit that that falls far short of the pleading requirements to plead an equal protection claim based on age or gender to survive a motion for judgment on the pleadings. And so unless this court has any additional questions, I thank it for its time and ask you to affirm the decision of the district court. Thank you. Just curious, just one question I have. Is there anything in the record that tells us why the board three to one decided to terminate her for what the speech she made on November 8th of the election year? Uh, they're horrible about what she did that caused them to do this. Uh, your honor, other than what's alleged in the complaint, I don't believe there's anything else in the record. And I believe that what's alleged in the complaint is that she, she made her allegations, the board adjourned, and then it came back and removed her. I think that that's all there is in the pleadings, your honor. And was it, wasn't her, did she also reduce her speech to a written letter or formal writing of what her complaints were? Uh, your honor, I'm not certain of that. Uh, it, again, it would be just solely what's in what's alleged in the complaint because it was a motion for judgment on pleadings. Okay. Well, thank you. Uh, counsel, we'll hear from, um, Ms. Petro. Thank you, your honor, Mr. Stankunas, Mr. Ratliff. My name is Susan Petro. I appear on behalf of John Meyer, the other appellee in this case. And I, um, I, I believe you may be aware that, uh, Ms. Schwamberger has said in her briefing, at least on reply, that she did not intend to raise on appeal any issue with respect to Mr. Meyer. However, in her first amendment retaliation claim, she did repeatedly refer to appellees as the bad actors. And therefore, we do appear on behalf of Mr. Meyer just to protect his interest. Ms. Schwamberger's counsel made reference to the fact that under Garcetti and Handy Clay, uh, there are three factors that we take into consideration in determining whether a first amendment retaliation claim has arisen, um, on the, on behalf of a public employee. One factor of which is whether she spoke as a private citizen. And we consider that factor to be determinative of her first amendment retaliation claim. The fact that she was speaking as a public employee and not as a private citizen is clear under those Handy Clay factors, the impetus for her speech, setting of her speech, the audience, and the general subject matter. In addition, Handy Clay indicates that relevant considerations include whether the statements were made to individuals up the chain of command, whether the content of the speech is nothing more than the quintessential employee beef that management has acted incompetently, whether the speech was made inside or outside of the workplace, and whether it concerned the subject matter of the speaker's employment. On all of those factors, Ms. Schwamberger's speech as an employee is clear. She has said in her own briefing, uh, that the board had to be notified of the information contained in her speech to fulfill its duties under Ohio revised code section 350111, that her speech, and I'm quoting, supports the board members in performance of their oath close quote. That's at her appellant's brief, page 19. In addition, um, as has already been mentioned, she was speaking under an oath that she took as the deputy director, but that is administered to every other employee. So it doesn't matter whether she was speaking as deputy director or not. She spoke at a meeting to the, held by the board of elections on a subject matter that was directly related to the election that had just occurred. I see that I am out of time. If you have any questions, I'll be happy to answer. Apparently not. Thank you, your honor. The case is submitted. Thank you. Thank you. And, um, is there any, is there any rebuttal or not? I preserved five minutes of rebuttal. I'm sorry. That's right. You do get rebuttal, uh, Mr. I apologize. You may proceed with your, your rebuttal. Thank you, your honor. Um, I just want to touch real briefly, but, and I wrote it down. Judge Gilman, uh, there was the, uh, allegation in the complaint that it was reduced to writing. Uh, it was not attached to the complaint. It has been reduced to writing. It was three pages. It was not attached. But at this stage, the court has to presume the facts as alleged in favor of the appellant. So the court has to be aware that it was reduced to writing. Um, I want to address that, uh, their briefing keeps asking that the application of the L Ron Bronte exception, uh, be implied in this case with the McLeod, uh, classification. The McLeod classification occurred as to a patronage, uh, type line of cases. So McLeod then, who was a second category two employee, created different categories for district courts to apply to patronage cases. This court then took the patronage case classification and applied it to, uh, protected speech cases. So Rose involved a category one employee that, uh, the case actually turned, uh, in my opinion on the fact that it wasn't a matter of public concern. It was a memorandum. Here we have a matter of public concern of the utmost importance. Our elections is of the utmost importance. So the Pickerington test still gets done in Rose. In Rose, it says the test is when an employee is a policymaking and confidential position. So you look at McLeod to determine that she's not policymaking. She's not making any policy. And Judge Zahari found that more than likely she's a confidential employee. She would, she, he used the term confidential. If she is a confidential employee and is terminated for speech related to his or her political or policy views, she's not, she's not talking about her policy views. She's talking about the views that are already in place by the board and by the directors. So she is speaking as to whether something occurred or not. And when, even if you want to try to apply the Elrod Bronte exception, what ends up happening is you end up saying a confidential employee is a McLeod classified employee, and we're going to do a Pickerington balance test by saying in Rose that we're only going to do it if their speech relates to his or her policy views. You can always make that argument if they're speaking about what's contained in their job in this circumstance. She actually has to speak about election laws. So if she speaks privately about election laws, you can always make the argument she's speaking on her own policy views. So what happens is, is you actually are just applying a blanket Ninth Circuit argument, which once you determine that they're a confidential position, you just apply the Bronte exception and you don't do a Pickerington balance test, which Rose says we are going to do a Pickering balancing test, but once we look at this test, what is it that occurs? And the reason Rose is different than this case is the memorandum was not a public concern. So it's easy to classify a category one employee that speaks out against their employer. She was not speaking out against the employer. She was speaking towards her oath, the same oath the board took. This is information. If she does not speak out, how does the public ever get this information? There is a separate line of cases under Garzetti that talks about political corruption. This case more aligns to a political corruption analysis and the importance of the public concern over any application of L. Ron Bronte exception that stems from patronage cases. We would admit that if she registered as a Republican, since she's a Democrat, she can be terminated under that exception. What we take exception to is trying to say we're going to do a Pickerington balance test in this case and say she's speaking on her own policy views. There is a greater public concern, stronger than any that we probably have had in a case before it, that the Rose case involved a memorandum, a private memorandum that was written regarding a position. This involves our election process. How is the public ever informed? And remember, the cases say there is an interest in the public receiving this information just as long as there is an interest in an employer keeping it from being disseminated so they can use an efficient workplace. So if we're going to do it, we would submit that the Pickerington balance in this case would always favor the deputy director because they have to speak about election policies. And I see my time is up. If there's any questions, I can answer those. If not, I am finished. All right. There being no indication of further questions, the case is now submitted.